THE PEOPLE OF THE TERRITORY OF COLORADO ex rel. THE
  DENVER & RIO GRANDE RAILWAY COMPANY *v.* BOARD
  OF COUNTY COMMISSIONERS OF PUEBLO COUNTY.

SUBSCRIPTION TO STOCK OF RAILWAY COMPANY BY A COUNTY — *when valid.*
  Until the board of county commissioners subscribe to the stock of a rail-
  way company, and authorize the payment thereof in the bonds of the
  county, the vote of the legal electors of the county authorizing such sub-
  scription to be made, goes for nothing.

The people of a county, in their primary capacity, have no authority under the
  law to make a contract of subscription binding upon the county ; the
  board of county commissioners, pursuant to the authority delegated by
  such vote, must enter into the contract of subscription before either the
  county is compellable by *mandamus* to surrender its bonds, or the railway
  company to deliver its stock.

### *Appeal from District Court, Pueblo County.*

THIS was an application for mandamus to compel the
county commissioners of Pueblo county to issue $50,000 in
the bonds of the county to the Denver & Rio Grande Rail-
way Company. An alternative writ was issued, in which
the facts were set forth as follows :

That the Denver & Rio Grande Railway, a corporation
existing under and by virtue of the laws of the territory of
Colorado, and doing business within the county of Pueblo
on the 1st of December, 1871, had constructed its railway
from Denver to Colorado Springs, and contemplated extend-
ing it thence to the coal fields of Fremont county by the
most advantageous route, and that the citizens of Pueblo
county, desiring such extension *via* the town of Pueblo,
made their petition signed according to law by over 100
voters, praying the board of county commissioners of
Pueblo county to order an election for voting to subscribe
$50,000 in this behalf, and to pay the same in the bonds of
the county ; that December 9, 1871, said commissioners met
to consider the matter, and thereupon ordered that a special
election be held for this purpose on the 10th day of Janu-
ary, 1872, reciting the propositions upon which said sub-

scription was to be made; and afterward, December 25, 1871, at a meeting of the said board of commissioners, the said election was postponed and fixed to be held on the 30th day of January, 1872, " for the purpose of voting upon the following questions: shall the county of Pueblo subscribe the sum of $50,000 to the capital stock of the Denver & Rio Grande Railway Company, to aid in its construction of a railway from the town of Pueblo to the coal fields of Fremont county, on the following conditions :

"1. Said sum of $50,000 shall be paid by the issue of a like amount of the bonds of Pueblo county, payable,' etc., (descriptive of character of bonds).

"2. The main trunk line of said railway shall be built southward from Colorado Springs, its present terminus, to the town of Pueblo to a point on the north side of the Arkansas river, within one mile of the new court-house, at which point said railway company shall construct its depot.

"3. A railway shall be constructed from said point, last mentioned, up the Arkansas valley to the coal fields of Fremont county.

"4. Said bonds shall issue when the said railway up the Arkansas valley is completed and ready for the running of cars to the coal mines, the same to be completed within one year from the day of the voting of the said bonds.

"5. If the county shall vote in favor of bonds, the county commissioners shall be trustees for the county in all matters appertaining to the issue, delivery and cancellation of said bonds, etc., etc.

"6. The failure of said railway company to comply with any of these conditions shall relieve said county from all obligations to subscribe to its stock.

" The ballots to be used at the said special election shall have written or printed thereon 'For the Bonds' or 'Against the Bonds.'　By order of the board of county commissioners, O. H. P. Baxter, chairman.　Attest: Sam McBride, clerk."

That the foregoing amended order was duly published in the newspapers of the town of Pueblo, according to law,

VOL. II.— 46

and that afterward, on the 30th day of January, 1872, the election was held according to the order and notice and according to law, " and at said election a majority of all the votes cast was ' For the Bonds,' to wit, in favor of the said subscription and issue of the bonds of the said county for the sum of $50,000 in aid of said railway, according to the propositions above recited, as appears by the canvass of the returns of said election," etc.

That thereupon, afterward the said railway company built the main line of their railway from Colorado Springs to Pueblo, to the point stipulated, and located and built its depot at said point, and afterward, within a year from the voting of the said bonds, to wit, between the 30th day of January, 1872, and the 1st day of November, 1872, built and completed a railway from the point mentioned up the said Arkansas valley to the said coal mines ready for the running of cars, as conditioned, and afterward the board of county commissioners procured to be engraved and printed, bonds of the county to the amount of $50,000, ready to be signed and delivered to the railway company in accordance with the said propositions, vote and subscription.

That afterward, November 9, 1872, the railway company, by Wilbur F. Stone, one of its attorneys, reported and suggested to the said board of commissioners, at a meeting thereof, the completion of said railway and the fulfillment by the company of all the conditions to be by said company performed, precedent to the issue and delivery of said bonds, and thereupon formally demanded of said commissioners the issue and delivery of said bonds to said company, which demand was then and there by said commissioners refused.

And that afterward, January 11, 1873, at a regular meeting of said board of commissioners, like demand was made and in like manner refused ; and afterward, February 8, 1873, at a special meeting of the said board, said demand was renewed and again refused ; and afterward, November 14, 1873, the said demand was again renewed at a meeting of said commissioners, and the said railway company then

and there tendered and delivered to the said commissioners a certificate of the capital stock of the said railway company, being the amount subscribed for by said county by the vote aforesaid, such tender being in complete fulfillment of all which the said railway company was and is required by law to do in the premises, and that thereupon the said commissioners again distinctly refused to issue and deliver said bonds.

Recites that the county of Pueblo, by its vote as aforesaid, lawfully authorized the issue and delivery of the bonds upon conditions which were fully complied with, and the said railway company, in good faith, has complied with each and every one of the conditions required to be done by it according to law and the propositions in the premises, and that the said commissioners, upon proper demand, refused to issue the bonds as their duty required of them, and which they had it in their power to do when so demanded, and still have it in their power to do."

A demurrer to the writ was sustained.

Mr. W. F. Stone, for appellant.

Mr. G. Q. Richmond, for appellee.

Belford, J.   From a careful examination of the act, authorizing subscriptions to be made to aid in the construction of railroads, it is apparent that the body clothed with the power of contracting is the board of commissioners, and it is equally clear that the exercise of this power is made dependent upon the approval of the people, expressed at an election called for that purpose.

In this case, it is evident from the form of the proposition submitted to the voters, as from other things in the record, that no stock had been subscribed prior to the election, but that the purpose of the election was to ascertain whether the popular will would authorize and sanction such a subscription.   The people can make no contract binding on the county.   They can approve or disapprove a contract

made by the board ; beyond this they cannot go. It is clear, also, that to maintain this action, the complainants must have a valid, legal right against the county, springing out of a contract made in a way known to and approved by the law.

To constitute a contract there must not only be parties competent to agree, but also mutuality of consideration and obligation. Both must be bound or neither can be held. The election proceeds upon the petition of the citizens. The railroad company is not a party in this preliminary step. The election is not and cannot be ordered at their request. They may submit their proposals to the board, and through it to the people; but the statute neither empowers the company to contract with the people, nor does it authorize the people, in their primary capacity, to contract with the corporation. This power is vested solely in their representatives, the commissioners, and to make it effectual they must pursue the strict letter of the law granting it.

The most that can be said as to the action of the board in this case is, that at an election they submitted certain proposals — by whom made does not clearly appear — to the consideration of the voters, and that they approved them. This is not enough, for, as we have seen, the people in their primary capacity are not empowered to contract. Nor can the commissioners make a contract that will bind the county until the people, through the ballot-box, tell them so to do. The action of both in their appropriate ways must be had before the negotiations can be consummated. "Until the county has subscribed," says the supreme court of Illinois, "there is no privity between the road and the county." It is the contract of subscription which compels the subscriber for stock to pay the money, and the company to issue to him shares of their stock. When the vote was taken and resulted in favor of subscription, it only amounted to a delegation of power to the commissioners to make the contract of subscription.

The company was no party to this vote, and has no more right to insist upon the execution of the power thus delega-

ted, than it would have in case an individual were to author-
ize an agent to subscribe for stock in the road, and who
should refuse to exercise the power of his principal. *P. &
O. R. R. Co.* v. *Tazewell County*, 22 Ill. 156.

If we were to concede the power of the people to make a
contract by a vote to take stock, still their vote could not
amount to a contract, till the company, through its proper
officers, also agreed to issue the stock. The record fails to
disclose any such contract on behalf of the corporation.

The recitals in this writ are simply to the effect that the
Denver and Rio Grande Railroad Company had constructed
its railway from Denver to Colorado Springs, and contem-
plated extending it thence to the coal fields of Fremont
county by the most advantageous route, and that the citi-
zens of Pueblo county, desiring such extension *via* the
town of Pueblo, made their petition, signed according to
law, praying the board of county commissioners of Pueblo
county to order an election for voting to subscribe $50,000
in this behalf, and to pay the same in the bonds of the
county.

That, pursuant to this petition, a special election was
ordered, the notice reciting the proposition upon which said
subscription was to be made. Thus far it would appear
that the acts performed were done by the commissioners on
the one hand, and the people on the other; between
the principal and the agents. There is nothing in the
record to show that the propositions voted on were sub-
mitted by the company, or that they had any knowledge of
the same. The connection of the corporation with the
transactions only becomes apparent when, through their
attorneys, they appear before the board and demand the
bonds of the county. Clearly, then, according to the recitals
of the writ, there is nothing that would indicate the exist-
ence of an obligation on the part of the company.

Had the commissioners, on behalf of the county, brought
suit to compel the issue and delivery of stock, the company
could well have replied under the facts set forth in this
record : " We never contracted to deliver any. The election

was a movement between the people and the commissioners ; we made no propositions. The record fails to disclose any agreement, and hence there is nothing on which to predicate a claim against us." And taking the facts set forth, no sufficient rejoinder could have been made by the board. It is insisted, however, that when the proposals were approved by the people, it then became the duty of the board to subscribe. As stated above, it does not appear that these propositions were submitted by the company. If they were not, then the transaction was purely one between the people and their agents, the company being in no sense a party or privy thereto. Under a statute whose language is identical with that of our own, it was held that the vote of the people could create no obligation on the part of the county or railroad company. Mr. Justice NELSON, in answering the argument " that the duty of the board to issue stock after the election was imperative," said " that a subscription was necessary to create a contract binding upon the county, on one side, to take the stock and pay in the bonds; and upon the other, to transfer the stock and receive the bonds for the same. Until the subscription is made, the contract is unexecuted and obligatory upon neither." *Aspinwall et al.* v. *Davis County*, 22 How. 367 ; *Commissioners of Crawford Co.* v. *The L. N. A., etc., R. R. Co.*, 39 Ind. 192 ; *Union Pacific R., etc.*, v. *Davis Co.*, 6 Kan. 256. In the absence of a contract, we see no obligation resting on the county which the complainants can enforce. It is very questionable whether the proceedings were valid in any sense. The order for the election was made at a special meeting, and there is nothing in the record to show that that meeting was appointed at a regular session of the board.

We are of the opinion that the court committed no error in sustaining the demurrer and refusing the writ.

Judgment is

*Affirmed.*